50 P.3d 618 (2002)
146 Wash.2d 861
In re the Personal Restraint Petition of Jerry GOODWIN, Petitioner.
No. 70916-5.
Supreme Court of Washington, En Banc.
Argued March 14, 2002.
Decided July 25, 2002.
*620 David Zuckerman, Seattle, for Petitioner.
Gerald Horne, Pierce County Prosecutor, Barbara Corey-Boulet, Deputy, Michelle Luna-Green, Deputy, Tacoma, for Appellee/Respondent.
*619 MADSEN, J.
Personal restraint petitioner Jerry Goodwin seeks relief from his sentence on the ground that his offender score was miscalculated because juvenile offenses that had "washed out" were used to determine the score. He asks to be resentenced based upon a corrected offender score. We grant the petition, vacate the sentence, and remand for resentencing.

Facts
On August 17, 1998, the State charged personal restraint petitioner Jerry Goodwin with one count of intent to manufacture methamphetamine and one count of possession of pseudoephedrine with intent to manufacture methamphetamine. As to each count, the State alleged that Goodwin was armed with a firearm. The State also charged Goodwin with one count of unlawful possession of a firearm in the first degree. On September 22, 1998, as part of a negotiated plea agreement, the State filed an amended information charging Goodwin with one count of conspiracy to manufacture a controlled substance and one count of unlawful possession of a firearm in the first degree. Goodwin entered an Alford plea of guilty to these charges.[1]
Goodwin's statement on plea of guilty shows that the standard range for the conspiracy charge (an unranked offense) was 0 to 12 months, and the standard range for the possession charge was 36 to 48 months. The range for the possession charge was determined using an offender score of 4, which was based upon a criminal history listed in the statement of robbery in California (Butte), some misdemeanors, auto theft, burglary 2, and robbery (Butte). With regard to this history, the statement provides that unless Goodwin had included a different statement, which he had not, he agreed that the prosecuting attorney's statement of his criminal history was correct and complete. The plea statement also contains a preprinted paragraph explaining when juvenile convictions were to be included in criminal history.
On the same day, September 22, 1998, the trial court held a sentencing hearing and entered a judgment and sentence that listed Goodwin's criminal history as auto theft, burglary 2, and robbery, all committed when Goodwin was a juvenile, and robbery, committed when Goodwin was an adult. The judgment and sentence includes Goodwin's birth date, June 10, 1970. The trial court determined that Goodwin's offender score was 4, and imposed a sentence of 12 months and one day on the conspiracy count and 48 months on the count of unlawful possession of a firearm, in accord with the plea agreement.
Goodwin did not file an appeal. On December 5, 2000, he filed a pro se personal *621 restraint petition, contending that his juvenile convictions for auto theft and burglary "washed out" under former RCW 9.94A.030 (1989), and therefore these convictions were improperly used in calculating his offender score. He cited State v. Cruz, 139 Wash.2d 186, 189, 985 P.2d 384 (1999), which held that a 1990 amendment to this statute did not revive prior juvenile convictions for sex offenses that had already "washed out." Goodwin also contended that the two robberies listed in the judgment and sentence were the same offense, committed when he was an adult. The Chief Judge of the Court of Appeals dismissed the petition in reliance on State v. Hendricks, 103 Wash.App. 728, 14 P.3d 811 (2000), rev'd in State v. Smith, 144 Wash.2d 665, 30 P.3d 1245, 39 P.3d 294 (2001), in which the Court of Appeals held that a 1997 amendment applied and required all juvenile offenses to be included in criminal history.
Goodwin filed a motion for discretionary review in this court. Consideration of the motion was stayed pending this court's decision in Smith, 144 Wash.2d 665, 30 P.3d 1245 (involving consolidated cases, including Hendricks ), as to the effect of the 1997 amendment. In Smith, this court held that neither the 1997 amendment to RCW 9.94A.030 nor a 2000 amendment, enacted in response to Cruz, 139 Wash.2d 186, 985 P.2d 384, applied to revive juvenile convictions that had "washed out" prior to the 1997 amendment. Smith, 144 Wash.2d at 668, 30 P.3d 1245. Once Smith was filed, the parties were directed to file additional briefing addressing that decision's application to Goodwin's case. The State then conceded that in light of Smith, Goodwin's juvenile convictions were improperly counted. The State contended, however, that Goodwin waived the issue by agreeing to the criminal history listed in his statement on plea of guilty. Alternatively, the State argued that Goodwin breached the plea agreement by collaterally attacking his sentence. Thereafter, this court granted discretionary review and appointed counsel to represent Mr. Goodwin.

Analysis
Initially, the State appropriately concedes that Goodwin may challenge his sentence despite the one-year bar of RCW 10.73.090 because the judgment and sentence appears invalid on its face. RCW 10.73.090(1) provides that "[n]o petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." In determining what "valid on its face" means for purposes of RCW 10.73.090, we have referred to a case involving the question whether the State had to prove the constitutional validity of all prior convictions used in determining a sentence under the Sentencing Reform Act of 1981. In re Pers. Restraint of Stoudmire, 141 Wash.2d 342, 353, 5 P.3d 1240 (2000) (citing and quoting State v. Ammons, 105 Wash.2d 175, 187, 713 P.2d 719, 718 P.2d 796 (1986)); In re Pers. Restraint of Thompson, 141 Wash.2d 712, 718, 10 P.3d 380 (2000) (same). In Ammons, the court reasoned that "[c]onstitutionally invalid on its face means a conviction which without further elaboration evidences infirmities of a constitutional magnitude." Ammons, 105 Wash.2d at 188, 713 P.2d 719.
We have never held, however, that RCW 10.73.090 requires, merely by use of the words "valid on its face," that the only type of invalidity that will prevent operation of the one-year bar to filing a personal restraint petition is constitutional infirmity. By its plain language, the statute does not state that "valid" means "constitutionally valid." As we reasoned in Stoudmire and Thompson, under RCW 10.73.090(1), "invalid on its face" means the judgment and sentence evidences the invalidity without further elaboration.[2]
*622 In this case, the judgment and sentence is invalid on its face, and Goodwin's petition is not barred because he filed it over one year after the judgment was final. Under former RCW 9.94A.030(12)(b), applicable here under Smith, prior juvenile class B and C felony convictions no longer count for purposes of calculating an offender score once the defendant turns 23. The sentence and judgment shows that Goodwin was a juvenile at the time of all but one of the convictions listed as his criminal history and that he was born in 1970, meaning he turned 23 in 1993. It also shows an offender score of 4, which could have been obtained only by counting the juvenile convictions.
When nonconstitutional grounds are asserted for relief from personal restraint, the petitioner "must establish (1) he or she is being unlawfully restrained, (2) due to a `fundamental defect which inherently results in a complete miscarriage of justice.'" In re Pers. Restraint of Fleming, 129 Wash.2d 529, 532, 919 P.2d 66 (1996) (quoting In re Pers. Restraint of Cook, 114 Wash.2d 802, 812, 792 P.2d 506 (1990)). Here, the State concedes that Goodwin's offender score was miscalculated because it was based upon juvenile offenses that had "washed out" under the relevant statutes as construed in Smith, and thus his judgment and sentence is fundamentally defective. The State argues in its supplemental brief, however, that Goodwin has not shown a complete miscarriage of justice because he agreed to the criminal history stated in the plea agreement and the State has detrimentally relied on that agreement. The State says that the parties made a "mutual mistake" that cannot be corrected because it is too late for the State to reinstate the original charges.
We first address the waiver issue raised by the State in the briefing we requested on the effect of the Smith decision. At the outset, we acknowledge that some of our cases are somewhat inconsistent on this question.
This court recently held, in a case in which no negotiated plea agreement was involved, that a petitioner is unlawfully restrained "to the extent he [or she] was sentenced on the basis of an incorrect calculation of his [or her] offender score." In re Pers. Restraint of Johnson, 131 Wash.2d 558, 568, 933 P.2d 1019 (1997).[3] This is because "[a] sentencing court acts without statutory authority ... when it imposes a sentence based on a miscalculated offender score." Id. Moreover, a sentence that is based upon an incorrect offender score is a fundamental defect that inherently results in a miscarriage of justice. Johnson, 131 Wash.2d at 569, 933 P.2d 1019. This is true even where the sentence imposed is actually within the correct standard range, if the trial court had indicated its intent to sentence at the low end of the range, and the low end of the correct range is lower than the low end of the range determined by using the incorrect offender score. Id. at 558, 933 P.2d 1019.[4]
The analysis in Johnson accords with early cases in this state, which drew a distinction between errors in a judgment resulting from some error or irregularity occurring at or before trial, and sentences imposed without jurisdiction or in excess of that authorized by law. While a judgment and sentence could not be successfully challenged on habeas corpus if it were merely erroneous, sentences in excess of lawful authority could be successfully challenged. E.g., In re Casey, 27 Wash. 686, 690, 68 P. 185 (1902). The rule was stated: "`[W]hen the court has jurisdiction of the person and the subject matter, and the punishment is of the character prescribed by law, habeas corpus will not lie for the release *623 of a prisoner because of mere errors, irregularities, and defects in the sentence which do not render it void.'" Gossett v. Smith, 34 Wash.2d 220, 223-24, 208 P.2d 870 (1949) (emphasis added) (quoting A.B. Shepherd, Annotation, Illegal or Erroneous Sentence as Ground for Habe as Corpus, 76 A.L.R. 460, 469 (1932)). If, however, the court lacked the "`authority to render the particular judgment,' "the judgment was "`fatally defective and open to collateral attack.'" Id. at 224, 208 P.2d 870 (quoting 75 Utah 245, 284 P. 323, 76 A.L.R. at 469).
The court has often reaffirmed the principle that a sentence in excess of statutory authority is subject to challenge, and the defendant is entitled to be resentenced. For example, in In re Pers. Restraint of Carle, 93 Wash.2d 31, 604 P.2d 1293 (1980), the defendant pleaded guilty to first degree armed robbery while armed with a deadly weapon, and his sentence included a deadly weapon enhancement. Subsequent to defendant's sentencing, this court held in another case that the deadly weapon enhancement was not applicable in the same circumstances. The court concluded in Carle that the trial court had accordingly imposed an erroneous sentence, and that "`[w]hen a sentence has been imposed for which there is no authority in law, the trial court has the power and duty to correct the erroneous sentence, when the error is discovered.'" Carle, 93 Wash.2d at 33, 604 P.2d 1293 (emphasis omitted) (quoting McNutt v. Delmore, 47 Wash.2d 563, 565, 288 P.2d 848 (1955), overruled in part on other grounds by State v. Sampson, 82 Wash.2d 663, 513 P.2d 60 (1973)); see also State v. Palmer, 73 Wash.2d 462, 475, 438 P.2d 876 (1968). The court held that under this rule the petitioner was entitled to relief under RAP 16.4, and the matter was remanded for resentencing. Carle, 93 Wash.2d at 34, 604 P.2d 1293. The court observed, however, that its holding did not affect the finality of that portion of the judgment and sentence that was correct and valid when sentence was imposed. Id. at 34, 604 P.2d 1293.
The same rule has been applied in cases involving negotiated plea agreements, and this court has consistently rejected arguments that a defendant must be held to the consequences of a plea agreement to an excessive sentence. For example, in the same year that Carle was decided, the court also decided In re Personal Restraint of Gardner, 94 Wash.2d 504, 617 P.2d 1001 (1980). There, pursuant to a negotiated plea bargain the defendant pleaded guilty to first degree possession of stolen property and second degree burglary, and the prosecution dropped additional burglary charges. The court imposed a sentence including restitution for victims of the uncharged crimes, although the relevant statute then allowed for restitution only for victims of crimes of which the defendant was convicted. This court remanded the matter for imposition of restitution in accord with the statutory authority. Importantly, the court rejected the State's argument that the restitution that had been imposed was a result of a plea agreement and therefore should be enforced. The court said, "a plea bargaining agreement cannot exceed the statutory authority given to the courts." Gardner, 94 Wash.2d at 507, 617 P.2d 1001.
Similarly, in State v. Eilts, 94 Wash.2d 489, 617 P.2d 993 (1980), superseded by statute/rule on other grounds by State v. Barr, 99 Wash.2d 75, 658 P.2d 1247 (1983), involving a direct appeal, the State argued that restitution should be enforced as agreed, even though in excess of statutory authority, because the agreement led the trial court to reject a long jail term in favor of probation conditioned on repayment to all the victims defendant defrauded in an investment scheme. This court rejected the argument on the ground that "a defendant cannot empower a sentencing court to exceed its statutory authorization." Eilts, 94 Wash.2d at 495-96, 617 P.2d 993. As in Carle, the court held the error was grounds for reversing only the erroneous portion of the sentence, and remanded for that purpose. Id. at 496, 617 P.2d 993. Significantly, this court recently characterized Eilts as holding that an agreement to restitution in excess of statutory authority does not bind the defendant or constitute a waiver to the unauthorized restitution. State v. Hunsicker, 129 Wash.2d 554, 561, 919 P.2d 79 (1996).
*624 The holdings in Gardner and Eilts were revisited in In re Personal Restraint of Moore, 116 Wash.2d 30, 803 P.2d 300 (1991). In Moore, the petitioner had been sentenced to life without the possibility of parole for first degree aggravated murder. This court held that the maximum sentence allowed by statute was life with the possibility of parole, and that the petitioner was accordingly entitled to relief because the sentence imposed was in excess of statutory authority. As in other cases, the State argued that the petitioner had entered into a plea bargain and therefore should be held to the consequences of that bargain. This court reiterated the rule that a plea bargain cannot exceed statutory authority of the courts: "[i]n other words, the actual sentence imposed pursuant to a plea bargain must be statutorily authorized; a defendant cannot agree to be punished more than the Legislature has allowed for." Moore, 116 Wash.2d at 38, 803 P.2d 300.
The holdings of Carle and Moore have continued to be recognized by this court. In Fleming, 129 Wash.2d 529, 919 P.2d 66, the court held that an untimely restitution order was not a fundamental defect warranting relief by way of personal restraint petition where the petitioner had agreed to defer the restitution hearing. The court distinguished Carle and Moore on the basis that in those cases the petitioners could never have been legally sentenced as they were because the court lacked statutory authority to impose the sentences, while in Fleming the court had authority to impose restitution at the time of sentencing but delayed at defendant's request. Fleming, 129 Wash.2d at 534, 919 P.2d 66. In In re Personal Restraint of Breedlove, 138 Wash.2d 298, 979 P.2d 417 (1999), the petitioner had agreed to an exceptional sentence in a plea agreement in order to avoid a possible greater term of confinement on greater charges. This court noted the rule that "[i]mposition of a sentence which is not authorized by the SRA is a fundamental defect which may justify collateral relief." Breedlove, 138 Wash.2d at 304, 979 P.2d 417 (citing Fleming, 129 Wash.2d at 533, 919 P.2d 66; Moore, 116 Wash.2d at 33, 803 P.2d 300; Carle, 93 Wash.2d at 33, 604 P.2d 1293). The court reasoned, however, that the exceptional sentence imposed was authorized because exceptional sentences are provided for by statute. Breedlove, 138 Wash.2d at 305, 979 P.2d 417. The issues then became, in Breedlove, whether agreement to an exceptional sentence was a reason justifying an exceptional sentence, and whether the trial court's failure to enter findings in support of an exceptional sentence was invited error.
Thus, there is a substantial body of law demonstrating that a defendant cannot, by way of a negotiated plea agreement, agree to a sentence in excess of that authorized by statute and thus cannot waive a challenge to such a sentence. However, unlike the cases discussed above, two recent decisions by this court cast doubt on the continuing efficacy of those decisions. These cases indicate that a challenge to a sentence in excess of that authorized by statute may be waived by a plea agreement where the defendant agrees to the unauthorized sentence, including sentences resulting from incorrect offender scores. In In re Personal Restraint of Call, 144 Wash.2d 315, 28 P.3d 709 (2001), the defendant had agreed to plead guilty to first and second degree robbery and first degree theft in exchange for the prosecutor's dismissal of four counts of forgery and a deadly weapon enhancement, and a recommendation that the sentence be imposed at the low end of the standard range for the robbery. The listed criminal history, however, included two Texas adult convictions that had "washed out". The trial court imposed a sentence in accord with the agreement. The defendant asserted, as Mr. Goodwin does, that his offender score was miscalculated because of the use of the "washed out" convictions. The State raised several arguments in favor of the sentence imposed, including invited error, waiver, and benefit of the bargain.
This court said that the invited error doctrine does not apply to validate a sentence based upon an incorrect offender score, and also said that where an offender's sentence is based upon a miscalculated offender score, a complete miscarriage of justice has occurred that requires relief from restraint, i.e., resentencing based upon a correct offender score. Call, 144 Wash.2d at 321, 327-28, 28 P.3d *625 709. To this extent, the analysis is consistent with the cases discussed above. However, the court also considered the issues raised by the State as to whether the petitioner invited the error or waived his challenge by entering the plea agreement. The court reasoned that both the State and the petitioner were unaware of the errorinstead, there was a mutual mistakeand the defendant took no affirmative action knowingly setting up the error. Id. at 326-29, 28 P.3d 709. The court termed the error an inadvertent technical defect. Id. at 326, 28 P.3d 709. The matter was remanded for resentencing.
Shortly after Call was decided, the court again addressed a personal restraint petitioner's claim that his offender score had been miscalculated. In re Pers. Restraint of Connick, 144 Wash.2d 442, 28 P.3d 729 (2001). In Connick, the prosecutor indicated at sentencing that defendant's standard range sentence was 46-61 months based upon an offender score of 6. That calculation did not accord with the Department of Corrections report, which showed an offender score of 9. When the trial court questioned the difference, defense counsel stated that in order to move the proceedings forward the defendant was willing to agree for purposes of the hearing that his offender score was 9 and his standard range 77 to 102 months. The trial court accepted this as a stipulation and imposed a sentence of 102 months. The defendant then filed a personal restraint petition, claiming that North Carolina convictions listed in his criminal history constituted the same criminal conduct, and thus should have been counted as one offense. This court held that the defendant failed to establish factually that the out of state offenses constituted the same criminal conduct. However, the court also said that by stipulating to his offender score, the defendant waived any challenge to the calculation to that score. Connick, 144 Wash.2d at 461-62, 28 P.3d 729.
Call and Connick both suggest that, depending upon the circumstances, a defendant can waive any challenge to a miscalculated offender score by agreeing to that score (or to criminal history on which the score is based) in a plea agreement or by other stipulation.
We take this opportunity to clarify the law. In keeping with long-established precedent, we adhere to the principles that a sentence in excess of statutory authority is subject to collateral attack, that a sentence is excessive if based upon a miscalculated offender score (miscalculated upward), and that a defendant cannot agree to punishment in excess of that which the Legislature has established. Accordingly, we hold that in general a defendant cannot waive a challenge to a miscalculated offender score. There are limitations on this holding. While waiver does not apply where the alleged sentencing error is a legal error leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion.
Thus, for example, waiver may be found where a defendant stipulates to incorrect facts. The decision in State v. Majors, 94 Wash.2d 354, 616 P.2d 1237 (1980) is instructive by analogy. In Majors, the defendant pleaded guilty to reduced charges and agreed to being a habitual offender based on a supplemental information alleging two prior convictions, in hopes of obtaining a shorter sentence under the habitual offender statute. On appeal, the defendant argued that his sentence was erroneous, arguing that the supplemental information was defective because one of the convictions did not precede the current offense, as required for habitual offender status. This court concluded: "We see no reason why a defendant who agrees to be designated a habitual criminal should not be held to his bargain under the circumstances here presented, when he undisputedly was aware of the consequences of his waiver and there was plainly a factual basis for the plea." Majors, 94 Wash.2d at 358, 616 P.2d 1237. The court said the error was a technical defect, reasoning that defendant was collaterally attacking the sufficiency of the supplemental information where he had clearly not been misled as to the charges; the court observed that in the federal system collateral attacks on the sufficiency of charging instruments were generally not permitted except in exceptional circumstances. Id. at 358-59, 616 P.2d 1237 (citing Keto v. United *626 States, 189 F.2d 247, 251 (8th Cir.1951); accord United States v. Debrow, 346 U.S. 374, 377-78, 74 S.Ct. 113, 98 L.Ed. 92 (1953)). Majors thus involved a stipulation to facts constituting an element of the charge, unlike an agreement that prior history includes certain convictions for purposes of sentencing. Majors thus highlights the distinction between a stipulation based on erroneous facts and one involving a stipulation or agreement to a sentence that legally exceeds statutory authority of the sentencing court. As the court said in Moore, "[a]ssuming the stipulated fact, the sentence the defendant received was authorized and constitutional." Moore, 116 Wash.2d at 38, 803 P.2d 300.
In addition, waiver may be found in a case like State v. Nitsch, 100 Wash.App. 512, 997 P.2d 1000, review denied, 141 Wash.2d 1030, 11 P.3d 827 (2000), where the defendant argued for the first time on appeal that the two crimes he was convicted of constituted the same criminal conduct, and therefore neither could not be counted as part of his offender score for sentencing for the other crime. He had, however, agreed in his own presentence memorandum that his offender score had been properly calculated. The Court of Appeals noted that application of the same criminal conduct statute involves both factual determinations and the exercise of discretion. Nitsch, 100 Wash.App. at 523, 997 P.2d 1000. The court held that the defendant's "failure to identify a factual dispute for the court's resolution and ... failure to request an exercise of the court's discretion" waived the challenge to his offender score. Id. at 520, 997 P.2d 1000.
We note that our holding is supported by the rule that a court is not bound by an erroneous concession related to a matter of law. State v. Knighten, 109 Wash.2d 896, 902, 748 P.2d 1118 (1988). Our approach also accords with RCW 9.94A.530(2) (formerly 9.94A.370), which provides that "[i]n determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing."
In Goodwin's case there is not, and never has been, merely a factual dispute. The judgment and sentence on its face shows that Goodwin's offender score was miscalculated. Nor is there any sentencing court discretion at issue. There is simply no question that Goodwin's offender score was miscalculated, and his sentence is as a matter of law in excess of what is statutorily permitted for his crimes given a correct offender score. Goodwin cannot waive the legal effect of his prior convictions under these circumstances because he cannot agree to a sentence in excess of that statutorily authorized. Therefore, his sentence, based upon an incorrect offender score, is fundamentally defective. Johnson, 131 Wash.2d at 569, 933 P.2d 1019.[5]
The State maintains, however, that Goodwin cannot show a complete miscarriage of justice because he agreed to the criminal history in the plea agreement and the State has detrimentally relied on that agreement. The State says that the miscalculated offender score resulted from a mutual mistake. The State contends that the usual remedy is the defendant's withdrawal of his guilty plea, leaving the State free to reinstate the original charges. Here, the State says, it cannot reinstate the original charges because the statute of limitations has run. The State urges that the court should leave the parties as it found them since the mistake cannot be corrected.
We reject this argument. Our focus is not the voluntariness of the plea agreement,[6] nor are we engaging in a balancing *627 process, weighing the harm to the State versus the harm to the personal restraint petitioner. Rather, we are considering a fundamental defect, which is not of constitutional magnitude, and whether that defect has resulted in a complete miscarriage of justice. As noted, this court has already held that a sentence based upon a miscalculated offender score is a fundamental defect that results in a complete miscarriage of justice. Johnson, 131 Wash.2d at 568-69, 933 P.2d 1019. We conclude that the fact that a negotiated plea agreement was involved here does not require any other conclusion. First, that holding is in keeping with this court's precedent. As explained, the court has granted relief to personal restraint petitioners in the form of resentencing within statutory authority where a sentence in excess of that authority had been imposed, without regard to the plea agreements involved. See Gardner, 94 Wash.2d 504, 617 P.2d 1001; Moore, 116 Wash.2d 30, 803 P.2d 300. Correcting an erroneous sentence in excess of statutory authority does not affect the finality of that portion of the judgment and sentence that was correct and valid when imposed. Carle, 93 Wash.2d at 34, 604 P.2d 1293. The court has also recognized, on direct appeal, that the erroneous portion of a sentence in excess of statutory authority must be reversed, and a plea agreement to the unlawful sentence does not bind the defendant. Eilts, 94 Wash.2d 489, 617 P.2d 993.
Second, it is also consistent with legislative intent that criminal history be correctly determined and the corresponding sentence be imposed. For example, RCW 9.94A.421 (formerly RCW 9.94A.080) provides that the prosecution cannot agree not to allege prior convictions. Thus, the State cannot by a plea agreement agree to less criminal history than exists, and cannot agree to a reduced offender score in this way. Similarly, the superior court rule on guilty pleas requires the defendant's written statement, set out in substantially the form included in the rule when pleading guilty. CrR 4.2(g). That form states that if any additional criminal history is discovered, the defendant cannot change his or her mind about the agreement, even though the standard sentence range and prosecuting attorney's recommendation may increase or a mandatory sentence of life without possibility of parole may result because of the additional criminal history. CrR 4.2(g), Statement of Defendant on Plea of Guilty, 6(d).
We grant Goodwin's personal restraint petition, vacate his sentence, and remand his case for resentencing using a correct offender score. See Johnson, 131 Wash.2d at 569, 933 P.2d 1019; Carle, 93 Wash.2d at 34, 604 P.2d 1293; Eilts, 94 Wash.2d at 496, 617 P.2d 993.[7]
ALEXANDER, C.J., SMITH, JOHNSON, SANDERS, IRELAND, BRIDGE, CHAMBERS and OWENS, JJ., concur.
NOTES
[1] North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).
[2] Moreover, as we also reasoned in Stoudmire and Thompson, "on its face" has been interpreted to include the documents signed as part of a plea agreement, and thus we considered the plea agreements in each of those cases when assessing whether the judgments and sentences were valid on their face for purposes of RCW 10.73.090(1). In re Pers. Restraint of Stoudmire, 141 Wash.2d 342, 354, 5 P.3d 1240 (2000); In re Pers. Restraint of Thompson, 141 Wash.2d 712, 719, 10 P.3d 380 (2000).
[3] RCW 9.94A.441 (formerly RCW 9.94A.100) provides: "The prosecuting attorney and the defendant shall each provide the court with their understanding of what the defendant's criminal history is prior to a plea of guilty pursuant to a plea agreement." The burden of establishing criminal history by a preponderance of the evidence lies with the prosecution. State v. Ford, 137 Wash.2d 472, 477, 973 P.2d 452 (1999); see RCW 9.94A.500 (formerly RCW 9.94A.110).
[4] Johnson involved a miscalculation due to the sentencing court counting two prior convictions separately in conflict with this court's later decision in In re Personal Restraint Petition of Sietz, 124 Wash.2d 645, 880 P.2d 34 (1994) that for offenses committed prior to July 1, 1986, a revoked probation or parole merges with another offense served concurrently for purposes of calculating an offender score.
[5] While our holding differs from some of the analysis in In re Personal Restraint of Call, 144 Wash.2d 315, 28 P.3d 709 (2001), we add that the result in that case is still correct. We also recognize that the court's descriptions of what might constitute a waiver in Call and In re Personal Restraint of Connick, 144 Wash.2d 442, 28 P.3d 729 (2001), are difficult to reconcile. Our analysis in the present case supersedes the waiver analysis in Call.
[6] The State's proposed remedy is, in any event, incorrect where a plea agreement is involuntary because based on a mutual mistake. As the court observed in State v. Walsh, 143 Wash.2d 1, 8-9, 17 P.3d 591 (2001), in such a case the defendant ordinarily has the choice of specific enforcement or withdrawal of the guilty plea, unless there are compelling reasons not to allow defendant's choice of remedy.
[7] Goodwin also raises a concern about the two robbery convictions listed as part of his criminal history. On remand, the sentencing court should determine whether one or two robberies were committed, and whether, if two, one "washes out."