# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48833-7-II |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| DEDRIC LAMAR GREER, | |
| Appellant. | |

MAXA, A.C.J. – Dedric Greer appeals his conviction and sentence for second degree murder. Greer pleaded guilty and stipulated that he had two prior Arkansas convictions that were comparable to Washington offenses. The trial court imposed the maximum standard range sentence.

We hold that (1) the trial court did not err by not appointing substitute counsel at the sentencing hearing, (2) the trial court erred in calculating Greer's offender score based on a stipulation that a 2005 Arkansas conviction was comparable to a Washington offense based on a non-existent Washington statute, and (3) Greer has not established ineffective assistance of counsel.

Accordingly, we affirm Greer's conviction, but we reverse his sentence and remand for resentencing.

FACTS

On July 22, 2015, the State charged Greer with second degree murder for the death of a 15-month-old child, SMJ, with the aggravating factors that Greer abused his position of trust and that the victim was particularly vulnerable.

According to the statement of probable cause, Greer and SMJ's mother brought SMJ to the hospital on the morning of July 18. SMJ was already dead and rigor mortis had set in, indicating that SMJ had been dead for some time before his arrival at the hospital. An autopsy on SMJ showed that he died from blunt force injury to the abdomen. The medical examiner also noted that SMJ had multiple scars of varying age and injuries that appeared to have been inflicted around the time of death. The examiner believed that SMJ had suffered repeated abdominal trauma for weeks.

*Guilty Plea*

On January 22, 2016, the State amended the charge to second degree murder without the two aggravating factors in exchange for a guilty plea. Greer signed a written plea statement in which he pleaded guilty to second degree murder. In the plea statement, Greer admitted assaulting SMJ and causing his death.

Greer also signed a stipulation regarding his prior criminal record and offender score. The stipulation listed two prior convictions from Arkansas. The first was listed as "Fel Theft By Rec" with the notation "[=RCW 46.12.750]" underneath and the point score listed as one. Clerk's Papers (CP) at 17. The second was listed as "Sex Aslt 2" with the notation "[=RCW 9A.44.050(1)(b)]" underneath and the point score listed as 2. CP at 17. The stipulation also stated that the defendant "asks this court to sentence according to the stipulated offender score

2

set forth above" and that "[i]f sentenced within the standard range, the defendant further waives any right to appeal . . . based upon the above stated criminal history and/or offender score calculation." CP at 17.

Consistent with the stipulation, the guilty plea statement showed that Greer's offender score was 3 and calculated his standard range sentence at 154 to 254 months. The plea statement also included a statement that the prosecutor would recommend a 254 month sentence, but that Greer may argue for 154 months confinement, the low end of the standard range.

The trial court went through the guilty plea with Greer to confirm that he understood the plea and the rights he was giving up. The court accepted Greer's guilty plea, finding that the plea was voluntary and made with a full understanding of the rights he was giving up.

*Motion to Withdraw Guilty Plea*

At the beginning of the sentencing hearing, defense counsel told the trial court that Greer wanted to withdraw his guilty plea. Defense counsel stated, "I will turn it over to Mr. Greer. I'm not precisely sure what the basis is for that motion." Report of Proceedings (RP) (Mar. 31, 2016) at 3.

Greer told the court that he wanted to withdraw his guilty plea because he felt it was the result of a miscommunication between defense counsel and himself. He stated that he felt there was a conflict of interest. Greer said he originally told defense counsel that he wanted to argue that SMJ's death was an accident, but that defense counsel said Greer could not do that. He also stated that he thought he was entering an *Alford*[1] plea, not a straight guilty plea.

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

The trial court stated that whether Greer entered an *Alford* plea or a straight guilty plea made no difference for sentencing purposes. The court also noted that it had gone over the plea with Greer and told him about all the rights Greer was giving up by entering the plea. The court found there was no legal basis for Greer to withdraw his guilty plea and denied Greer's motion to withdraw the plea.

*Sentencing*

During sentencing, the prosecutor recommended a 254-month sentence based in part on the victim's young age. Defense counsel did not request a specific sentence. He acknowledged that the case was "rife with all of the emotional upheaval that calls out for a sentence higher than the low end," but he emphasized that Greer had expressed regret and had taken responsibility for his actions. RP (Mar. 31, 2016) at 8. Defense counsel stated that Greer was "truly sorry for what it is that he has done" and noted that Greer signed off on restitution. RP (Mar. 31, 2016) at 8. Defense counsel also stated that although Greer initially tried to withdraw his guilty plea, Greer "has since thought better of his decision today to try to withdraw his plea" and has taken responsibility. RP (Mar. 31, 2016) at 8-9.

Finally, defense counsel asked the trial court to show Greer compassion and mercy: "[I]t's not a low end case, Your Honor. But I'm going to ask that you not high end Mr. Greer and that you show him some mercy, some mercy that he should have shown his victim and did not." RP (Mar. 31, 2016) at 9.

The trial court sentenced Greer to 254 months, stating that he could not in good conscience show mercy and leniency because of the "brutality of the crime itself" and "the callous neglect after the fact." RP (Mar. 31, 2016) at 11.

4

Greer appeals his conviction and sentence.

ANALYSIS

A.    FAILURE TO APPOINT NEW DEFENSE COUNSEL

Greer argues that the trial court violated his right to counsel by failing to appoint new defense counsel to help Greer make his motion to withdraw his guilty plea, based on Greer's statement that there was a miscommunication and conflict of interest with his defense counsel.[2] We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution provide a criminal defendant with the right to counsel at all critical stages of criminal prosecution. *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). A critical stage is one in which a defendant's rights, defenses, or privileges may be lost, claimed, or waived or the outcome of the case is substantially affected. *Id.* at 910. A motion to withdraw a guilty plea that comes before the court enters judgment and sentence is considered a critical stage. *State v. Harell*, 80 Wn. App. 802, 803-04, 911 P.2d 1034 (1996).

But a defendant does not have an absolute right to choose his counsel. *State v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004). To justify replacing appointed defense counsel, the defendant must show good cause. *Id.* Good cause includes a conflict of interest, an irreconcilable conflict, or a complete breakdown in communication between the defendant and defense counsel. *Id.* But the defendant's general dissatisfaction with or loss of trust or confidence in defense counsel is not sufficient cause to appoint new counsel. *Id.* The

---

[2] Greer also seems to argue that his right to counsel was denied because defense counsel refused to assist Greer in moving to withdraw his guilty plea. Greer makes the same argument in his ineffective assistance of counsel claim, and the argument will be addressed in that context below.

relationship between the defendant and counsel must be so diminished as to prevent presentation of an adequate defense. *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997).

Here, Greer never requested substitute counsel. He did state that he believed his counsel had a conflict of interest and that there had been miscommunication between counsel and himself, but that was in the context of Greer's motion to withdraw his guilty plea. And Greer never explained why his counsel had a conflict of interest. Greer's statements did not indicate that he wanted new counsel, nor did his statements indicate that he was unable to work with defense counsel to receive an adequate defense.

Accordingly, we hold that the trial court did not violate Greer's right to counsel by not appointing new defense counsel at the sentencing hearing.

B.      SENTENCE BASED ON STIPULATED OFFENDER SCORE

Greer argues that the trial court lacked authority to impose Greer's sentence because it was based on an incorrect offender score. Greer argues that his stipulation that his 2005 Arkansas conviction was comparable to RCW 46.12.750 was invalid because that statute was not in existence in 2005. The State argues that Greer waived any challenge to his offender score by stipulating that the Arkansas conviction was comparable to a Washington offense, and that listing RCW 46.12.750 instead of the statute that was in effect in 2005 was merely a scrivener's error. We agree with Greer.

1.      Legal Principles

A defendant cannot agree to punishment in excess of that established by the legislature. *In re Pers. Restraint of Goodwin*, 146 Wn.2d 861, 873-74, 50 P.3d 618 (2002). Therefore, in

general a defendant's stipulation to a miscalculated offender score does not waive a challenge to the miscalculated score. *Id.*

But the court in *Goodwin* recognized limitations to the general rule that "a defendant cannot waive a challenge to a miscalculated offender score." *Id.* at 874. The court stated that "[w]hile waiver does not apply where the alleged sentencing error is a *legal error* leading to an excessive sentence, waiver can be found where the alleged error involves an agreement to facts, later disputed, or where the alleged error involves a matter of trial court discretion." *Id.*

In *State v. Hickman*, the court considered how the waiver doctrine described in *Goodwin* would apply to a defendant's stipulation that an out-of-state conviction was comparable to a Washington offense. 116 Wn. App. 902, 906-907, 68 P.3d 1156 (2003). Out-of-state convictions can be included in a defendant's offender score only if they are comparable to a Washington offense. *State v. Arndt*, 179 Wn. App. 373, 378, 320 P.3d 104 (2014). Whether an out-of-state conviction is comparable to a Washington offense generally involves a factual determination. *Id.* Therefore, in *Hickman* the court stated that "[b]ecause the doctrine of waiver applies where the alleged error involves a factual dispute, a defendant who stipulates that his out-of-state conviction is equivalent to a Washington offense has waived a later challenge to the use of that conviction in calculating his offender score." 116 Wn. App. at 907.

However, the court in *Hickman* did not address the situation where a defendant stipulates that an out-of-state conviction is comparable to a nonexistent Washington statute.

2. Analysis

The offender score stipulation stated that Greer's 2005 Arkansas conviction was comparable to RCW 46.12.750. However, RCW 46.12.750 did not exist in 2005.

At the time of Greer's 2005 Arkansas conviction, the Washington offense similar to the stipulated Arkansas offense[3] was described by former RCW 46.12.210 (2003), titled "Penalty for false statements or illegal transfers." Former RCW 46.12.210 was recodified in 2010 – five years after Greer's conviction – as RCW 46.12.750. LAWS OF 2010, ch. 161, § 1214. The elements of the two statutes are substantially similar, except RCW 46.12.750 includes additional means of violating the statute by forgery that were not included in former RCW 46.12.210.

When determining comparability, the court must compare the out-of-state offense to the elements of a Washington criminal statute that was in effect when the out-of-state crime was committed. *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 255, 111 P.3d 837 (2005). The 2005 Arkansas conviction as a matter of law could not be comparable to an offense described by a nonexistent statute. Therefore, the trial court committed a legal error in calculating Greer's offender score based on his invalid stipulation on the 2005 Arkansas conviction and Greer could not waive that legal error. *Goodwin*, 146 Wn.2d at 874.

The State argues that the stipulation merely contained a scrivener's error. Instead of identifying former RCW 46.12.210 as the applicable Washington statute, the drafter mistakenly wrote RCW 46.12.750. But there is no indication in the record that either party intended to refer to former RCW 46.12.210 instead of RCW 46.12.750. *See State v. Moten*, 95 Wn. App. 927, 929 & n.1, 976 P.2d 1286 (1999) (finding an "obvious scrivener's error" where the wrong statute was listed on the judgment and sentence form, but the record indicated and the defendant

---

[3] Although the stipulation did not identify the applicable statute, presumably the Arkansas offense was felony theft by receiving stolen property under former Ark. Code Ann. § 5-36-106 (2003).

acknowledged that the correct statute was used for sentencing). Therefore, the reference to RCW 46.12.750 was a substantive error rather than a scrivener's error.

We hold that the trial court erred as a matter of law in including Greer's 2005 Arkansas conviction in his offender score.

### 3. Remedy

Greer requests that we remand for a new sentencing hearing. We grant that relief.

At resentencing, Greer's stipulation regarding his 2005 Arkansas conviction will have no effect. However, if the parties do not enter into another stipulation, the State will be able to submit additional evidence that the 2005 Arkansas conviction is legally or factually comparable to a Washington conviction. RCW 9.94A.530(2).

In addition, depending on the outcome of the new sentencing hearing, Greer's offender score could be lower than the parties believed at the time of his guilty plea. Therefore, if the trial court determines on remand that the 2005 Arkansas conviction was not comparable to a Washington offense, Greer will be free to file a motion to withdraw his guilty plea on the basis that his plea was not knowing and intelligent.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

Greer argues that he received ineffective assistance of counsel for several reasons. We either reject or decline to consider Greer's ineffective assistance of counsel claims.

### 1. Legal Principles

We review claims of ineffective assistance of counsel de novo. *State v. Clark*, 187 Wn.2d 641, 649, 389 P.3d 462 (2017). To prevail on an ineffective assistance of counsel claim, the defendant must show both that (1) defense counsel's representation was deficient and (2) the

deficient representation prejudiced the defendant. *State v. Grier,* 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011). Representation is deficient if after considering all the circumstances, it falls below an objective standard of reasonableness. *Id.* at 33. Prejudice exists if there is a reasonable probability that except for counsel's errors, the result of the proceeding would have been different. *Id.* at 34.

We presume that counsel's assistance was effective unless the defendant shows in the record the absence of legitimate or tactical reasons supporting counsel's conduct. *Id.* at 33-34.

2. Failure to Argue the Motion to Withdraw Guilty Plea

Greer argues that his counsel was deficient for not assisting him with his motion to withdraw his guilty plea. We disagree.

Greer claims that defense counsel abandoned him when he attempted to withdraw his plea. But the record does not support this claim. Defense counsel raised the motion with the trial court, but then told the court that Greer would speak about the precise reasons why he wanted to withdraw his plea because defense counsel was unaware of them himself. There is no indication that Greer objected to the manner in which defense counsel proceeded or that his defense counsel refused to assist with the motion.

Accordingly, we hold that under the facts here, counsel was not deficient regarding Greer's motion to withdraw his guilty plea.

3. Stipulation to Comparability of 2014 Arkansas Conviction

Greer argues that he received ineffective assistance of counsel when defense counsel allowed him to stipulate that his 2014 Arkansas conviction was comparable to an offense under

RCW 9A.44.050(1)(b). We hold that the record is insufficient to resolve this argument and therefore decline to address it. [4]

Out-of-state convictions can be included in a defendant's offender score only if they are either legally or factually comparable to a Washington offense. *State v. Arndt*, 179 Wn. App. at 378-79. Offenses are legally comparable if the elements of the out-of-state offense are the same or narrower than the Washington statute. *State v. Olsen*, 180 Wn.2d 468, 472-73, 325 P.3d 187 (2014). Offenses are factually comparable when defendant's actual conduct underlying the out-of-state offense would have violated the Washington statute. *State v. Thiefault*, 160 Wn.2d 409, 415, 158 P.3d 580 (2007).

Greer claims that counsel was deficient for allowing him to stipulate to comparability because the applicable Arkansas statute was much broader than the Washington statute and therefore could not be legally comparable. [5] However, an offense that is not legally comparable can still be factually comparable. *Arndt*, 179 Wn. App. at 379. The record contains no information about the facts of Greer's offense, and therefore it is insufficient to determine whether the 2014 Arkansas conviction is factually comparable to an offense under RCW 9A.44.050(1)(b). In the absence of such information, we cannot determine whether defense counsel's performance was deficient.

---

[4] Greer makes the same argument regarding his stipulation that his 2005 Arkansas conviction was comparable to a Washington offense. Because we are reversing Greer's sentence based on that invalid stipulation, we need not address this issue.

[5] The stipulation does not state the applicable Arkansas statute, but Greer assumes based on the description "sex aslt 2," that the applicable Arkansas statute is Ark. Code Ann. § 5-14-125.

For the same reasons, Greer cannot show prejudice even if defense counsel was deficient. Greer would have to establish that if he had not stipulated that the 2014 conviction was comparable to a Washington offense, the State would have been unable to prove factual comparability. The record is insufficient to determine whether or not the 2014 Arkansas conviction was factually comparable to an offense under RCW 9A.44.050(1)(b).[6]

Because the record is insufficient to determine if defense counsel was deficient for allowing Greer to stipulate to the comparability of the 2014 Arkansas conviction, we decline to consider Greer's ineffective assistance of counsel claim based on that conviction. The appropriate means for asserting this claim is through a personal restraint petition. *See State v. McFarland*, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

4.     Failure to Ask for Low End Sentence

Greer argues that his defense counsel was deficient by not asking the trial court for a sentence on the low end of the standard range as stated in the plea agreement. Because we remand for resentencing, we need not address this issue.

D.     APPELLATE COSTS

Greer asks that we not impose costs if the State prevails. We decline to address this issue. A commissioner of this court will determine whether to award appellate costs under RAP 14.2 if the State decides to file a cost bill and if Greer objects to that cost bill.

CONCLUSION

We affirm Greer's conviction, but we reverse his sentence and remand for resentencing.

---

[6] Greer relies on *Thiefault*, to argue that an absence of facts in the record requires this court to find that there was a reasonable probability of prejudice. 160 Wn.2d at 417. But that case is distinguishable and does not apply here.

No. 48833-7-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, A.C.J.

We concur:

LEE, J.

SUTTON, J.